No. 44,582

STATE OF KANSAS, *Appellee*, v. LEO ARTHUR PITTMAN, *Appellant*.

(433 P. 2d 550)

Opinion filed November 13, 1967.

*Everett C. Fettis*, of Wichita, argued the cause, and *Paul Arabia* of Wichita, was with him on the brief for the appellant.

*Keith Sanborn*, County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, and *Donald Foster*, Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Leo Arthur Pittman, was convicted of three crimes: first degree kidnapping, statutory rape and sodomy. He was sentenced to life imprisonment on the kidnapping charge and to lesser terms on the other two. This appeal is from those sentences.

Two points, only, are raised on appeal:

1. That the defendant was denied the benefits of a preliminary hearing by reason of the examining magistrate's failure to appoint a sanity commission prior to the preliminary hearing to ascertain

whether the defendant was sane and able to understand his position and aid in his defense.

2. That error was committed by the trial court in admitting evidence of the defendant's oral confession.

In view of the limited issues raised on this appeal, it will be unnecessary to relate the sordid details of the three crimes charged against the defendant.

With regard to the first of the two points in issue, the defendant points out, and the record shows, that the attorney originally appointed to represent the defendant raised the question of his client's competency and his ability to understand his position and cooperate in his own defense, by means of a written motion filed in magistrate court prior to the preliminary examination. After lengthy colloquy and argument by counsel on both sides the magistrate reserved ruling until after the preliminary hearing was completed at which time, having heard all the testimony, he overruled the defendant's motion and bound the defendant over to the district court for trial.

It is the defendant's present contention that he was not sane or mentally competent, at the time his preliminary hearing was held, and he calls attention to the fact that some fifty days thereafter the district court appointed a sanity commission to aid that court in determining whether the defendant comprehended his position and was able to make his defense. Following the commission's report the district court found the defendant to be insane and unable to comprehend his position and assist in his own defense and, accordingly, committed the defendant to the Larned State Hospital. Following his commitment to that institution, the defendant escaped therefrom, in April, 1963, and was later committed to a mental institution in the state of Michigan, before being returned to Kansas to face the charges pending against him in Sedgwick County.

In view of all this, the defendant argues that he actually had no preliminary examination; that being insane at the time (which is his own assumption), he was not mentally present at the hearing; that the preliminary hearing was thus conducted in his absence, as though he were not personally present at all; and that being mentally absent from the preliminary examination was equivalent to being physically absent therefrom. Several Kansas cases are cited by the defendant as being pertinent to the issue he attempts to raise, including *In re Wright*, 74 Kan. 406, 86 Pac. 460, and *State v. Detar*, 125 Kan. 218, 263 Pac. 1071.

This is an interesting argument which might provide a fertile

field for discussion were it not for the fact we think the point has been waived by the defendant and is not properly before us for review. We will state our reasons.

When the defendant was returned to Kansas, the Sedgwick County District Court appointed an attorney to represent him and also appointed another sanity commission to determine the present sanity of the defendant and his ability to comprehend his position and conduct his defense. When this commission reported its findings, the trial court accepted them and found that the defendant was sane and able to comprehend his position and aid in his defense.

Trial commenced on January 4, 1966, on which date the defendant was arraigned and stood mute, whereupon the court entered a plea of "not guilty." The jury was sworn the next day, January 5, 1966. The following day, January 6, 1966, defense counsel orally moved that the defendant be discharged for the reason that he had been denied a preliminary hearing.

We believe the motion for discharge came too late. Whatever objections the defendant wished to voice against the preliminary examination, or lack of it, should have been presented by means of a plea in abatement prior to his arraignment, not after he had been arraigned and the jury had been empanelled and sworn.

This court recently considered the identical question in some depth in *State v. McCarther*, 196 Kan. 665, 414 P. 2d 59, where many of our own cases are cited, both ancient and modern. We shall not attempt an analysis of the McCarther decision other than to quote two of its passages which we feel are especially apt:

"It is a well-established rule of criminal procedure in this state that where there has in fact been no preliminary examination afforded the defendant, he is required to raise the question of the lack of such an examination prior to arraignment by filing a plea in abatement . . .

"Another rule ingrained in the criminal procedure of this state is that where a defendant files no plea in abatement that he had no preliminary examination on one or more charges contained in the information, and thereafter is arraigned, pleads not guilty, and goes to trial on the information, the subject of preliminary examination is no longer material (*State v. Bowman*, 80 Kan. 473, 103 Pac. 84; *State v. Perry*, supra; *State v. Saindon*, supra; *State v. Wallgren*, 144 Kan. 10, 11, 58 P. 2d 74), and a defendant cannot raise objection to the lack of or the sufficiency of a preliminary examination after trial and conviction (*State v. Perry*, supra; *Jennings v. State*, supra; *State v. Bowman*, supra; *State v. Wisdom*, supra), and objection by the defendant on appeal that he had no preliminary examination comes too late. (*State v. Bailey*, 32 Kan. 83, 3 Pac. 769.) See, also, *State v. Osburn*, 171 Kan. 330, 335, 232 P. 2d 451, and *Portis v. State*, 195 Kan. 313, 317, 403 P. 2d 959." (p. 671.)

Our most recent pronouncement on the subject appears in *Palmer v. State,* 199 Kan. 73, 427 P. 2d 492, where we said:

"When a defendant pleads guilty or goes to trial and is convicted of a charge he waives any claim of irregularity in the preliminary hearing by failing to object prior to plea or trial. (*Williams v. State,* 197 Kan. 708, 710, 421 P. 2d 194; *State v. McCarther,* 196 Kan. 665, 671, 414 P. 2d 59; *Smith v. State,* 196 Kan. 438, 411 P. 2d 663.)" (p. 75.)

We have often said that the preliminary hearing held pursuant to our statutes is not a trial in the usual or ordinary sense. (*Cooper v. State,* 196 Kan. 421, 411 P. 2d 652.) Neither is it a trial in the sense that one may be found guilty thereat. (*Smith v. State,* 196 Kan. 438, 411 P. 2d 663.) The preliminary examination under our procedure does not, of itself, constitute a critical phase of pending criminal proceedings; its sole purpose is to determine whether a crime has been committed, and if so, whether there is probable cause to charge the defendant with its commission. (*Williams v. State,* supra.)

There is nothing in the circumstances shown in the present record to suggest that any prejudice has resulted to the defendant from anything which occurred at the preliminary hearing. No plea was entered, no right to any defense was waived or lost, no testimony introduced at the hearing was later used at the trial. Under circumstances disclosed by this record a defendant may not wait until after he has been arraigned to attack the validity of the preliminary examination. The defendant's failure to act in this case, until after he was arraigned and the jury had been sworn, constitutes a waiver of his right to object to the regularity of the preliminary hearing.

For his second point the defendant maintains that his confession was inadmissible as having been made involuntarily. Objection on this ground was interposed by defendant during the trial, at which juncture the court conducted a preliminary inquiry outside the presence of the jury, in full compliance with the procedure outlined in *State v. Seward,* 163 Kan. 136, 181 P. 2d 478 and the requirements of our present statute, K. S. A. 60-408. See, also, *State v. Milow,* 199 Kan. 576, 433 P. 2d 538, in which Justice Schroeder discusses the rules governing the admissibility of confessions and the procedure to be followed at the trial. No attempt will be made by the writer of this opinion to duplicate what is expressed so aptly in the *Milow* decision.

Several contentions have been asserted to support the defendant's argument that his confession, which was given orally, was not the

product of his voluntary will: 1. That he was not advised of his constitutional rights. 2. That his statement, for the most part, was obtained after he had requested counsel. 3. That his statement was made after protracted questioning extending over a period of forty-eight hours. 4. That he was induced to confess by means of threats and promises.

All these contentions were advanced at the preliminary inquiry and were considered by the trial court after an extended hearing at which several witnesses testified, including the defendant, himself. When the out of court hearing had ended, the trial court concluded, as a preliminary matter, that the defendant's oral confession was voluntary and, consequently, was admissible. It appears from the record that the court properly instructed the jury in respect to its consideration of the confession.

There was substantial evidence that the defendant was advised of his constitutional rights. Several officers testified that he was told of his right to remain silent, that anything he might say could be used against him and that he had the right to counsel. The defendant himself admitted at the hearing before the court that he knew what his rights were and had been advised concerning them at the police station. While it does not appear of record that the defendant was told he would be furnished counsel, if he could not provide his own, the Miranda decision had not been spawned at that time and its guidelines are not applicable to this case under the authority of *Johnson v. New Jersey*, 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772, reh. den., 385 U. S. 890, 17 L. Ed 2d 121, 87 S. Ct. 12.

The time elapsing between the defendant's arrest and his oral confession was less than four hours and thirty minutes. Questioning was not continuous during that time; it appears to have been interrupted several times. The case of *McNabb v. United States*, 318 U. S. 332, 87 L. Ed. 819, 63 S. Ct. 608 is cited by the defendant among others. This court in *State v. Stubbs*, 195 Kan. 396, 407 P. 2d 215, discussed that case and held the McNabb rule, which was followed in *Mallory v. United States*, 354 U. S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356 does not apply to criminal proceedings in a state court. It is true that officers continued to talk with defendant after his oral confession, and that the following day the defendant accompanied officers to the place of the crimes. We believe, however, there was nothing in this lapse of time, or in what occurred during that time, which can be deemed to brand the confession as involuntary.

Complaint is made that the defendant was denied a lawyer. The facts which give rise to this contention are these: After he had orally admitted the crimes, the defendant was asked by Sgt. Nunemaker, a member of the Wichita police force, if he would give a taped statement. The defendant, in turn, asked Nunemaker if he should do so, to which the sergeant replied: "Well, I can't tell you that. That's something you're going to have to decide." After thinking about it the defendant said he wanted to talk to an attorney before he gave any taped statements. The defendant repeated this answer a short time later when he was again asked about giving a taped statement, and apparently no such statement was ever given.

So far as we can find from the record, these were the only two times the defendant referred to a lawyer while being questioned. We find nothing in the record to suggest that the defendant requested a lawyer prior to the time he made his oral confession, or that he was denied the services of a lawyer at any time while he was being held in custody. The defendant's testimony at the preliminary hearing on the question of voluntariness is set forth in considerable detail in the abstract and counter abstract, and we discern nothing in his testimony to indicate either that he asked for or was denied a lawyer. The facts do not bring this case within the orbit of *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758.

The evidence relating to the defendant's claim that his confession was induced by threats was sharply conflicting. The defendant testified that threats were made to have his baby taken away from his wife in the event he not confess. The officers so accused denied the accusations. The district court resolved this conflict against the defendant, as it was privileged to do.

There is evidence that the chief of police told the defendant during questioning that if he was holding back through fear of what would happen to his family, he (the chief) would see that the proper authorities were contacted and the family would be cared for. This is not the sort of promise, either in phraseology or content, which would overcome a defendant's free and unfettered will. While on the stand the defendant testified that neither the chief nor Sgt. Nunemaker made any promises to get him to say anything.

Before closing the book on this opinion, we deem it pertinent to comment briefly on the subject of preparing a record on appeal. We have, of late, discerned a growing and disturbing disposition

on the part of some appellate counsel to present large portions of the testimony given by witnesses, not in narrative form, but verbatim, in question and answer form. Rule No. 6 (c) (194 Kan. xii) provides, in pertinent part:

"Testimony of witnesses designated for inclusion should be in narrative form except that testimony must be included with verbal accuracy whenever the decision of any question in controversy may be affected thereby."

Although Rule No. 6 (c) is contained among our rules relating to civil appellate practice, the principle enunciated is equally valid where an appeal is taken in a criminal case.

In the instant case the appellant's abstract alone consists of some one hundred and sixty pages of verbatim copies of pages from the court reporter's transcript, while the appellee's counter abstract contains seventy-seven additional pages in question and answer form. A careful study of both abstract and counter abstract convinces us that much of the testimony need not have been included with verbal accuracy but could have been summarized in narrative form.

The preparation of voluminous records is of great expense to litigants, while the mere reading of the same places a burden on members of this court. The burden is increased when, as so frequently happens, several such tomes are presented during the same session of court.

We call this to the attention of members of our bar, not in a spirit of acrimony, but simply to enlist their cooperation in adhering to our rules which have been formulated in a sincere effort to improve appellate practice and procedure.

We find no error in the judgment of the court below and the same is affirmed.