No. 46,473

STATE OF KANSAS, *Appellee*, v. GEORGE L. CREEKMORE, *Appellant.*

(495 P. 2d 96)

Opinion filed March 4, 1972.

*Brian J. Moline*, of Wichita, argued the cause and was on the brief for the appellant.

*Roger C. Skinner*, deputy county attorney, argued the cause, and *Vern Miller*, attorney general, and *Keith Sanborn*, county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: George L. Creekmore was found guilty and sentenced on two counts of incest and two counts of carnal knowledge of a female under age of eighteen years. All charges arose from acts engaged in with his natural daughter. The appeal to this court raises one question.

Appellant complains that the trial court erred in admitting into evidence an extrajudicial statement obtained by two investigating officers. He claims the statement was involuntarily induced by promises and by indirect coercion.

Prior to the opening of the trial appellant's counsel filed a motion to suppress the statement given by the appellant. A full evidentiary hearing on the admissibility of the statement was held

by the court in the absence of the jury. The hearing was conducted as provided by K. S. A. 60-408 and as suggested by *State v. Milow*, 199 Kan. 576, 433 P. 2d 538, and *State v. Pittman*, 199 Kan. 591, 433 P. 2d 550. At the hearing testimony was taken from various witnesses, including the two detectives who took the statement, the attorney who represented appellant at the preliminary hearing, two sons of the appellant and the appellant himself. The 48 page record on appeal is composed mainly of the testimony and proceedings on the motion to suppress.

At the conclusion of the hearing the trial court found the appellant had been fully advised of his constitutional rights, was aware of the consequences of the statement and that no threat, promise, duress, coercion or compulsion was used to induce the statement. The court determined the statement of the appellant was freely, voluntarily and intelligently given and should be admitted into evidence.

When the trial court conducts a full preliminary inquiry on the admissibility of an extrajudicial statement given by an accused, determines the statement was freely, voluntarily and intelligently given and admits the statement into evidence at the trial, this court on appeal should accept that determination if it is supported by substantial competent evidence. (*State v. Pittman*, supra.)

In determining the voluntariness of a statement made by an accused the totality of the circumstances leading to and accompanying the giving of the statement should be considered. (*State v. Harden*, 206 Kan. 365, 480 P. 2d 53.) Failure to have counsel present does not *ipso facto* make the statement involuntary. It depends upon the surrounding facts and circumstances. (*State v. Cantrell*, 201 Kan. 182, 440 P. 2d 580, cert. den. 393 U. S. 944, 21 L. Ed. 2d 282, 89 S. Ct. 315.) Factors generally considered as bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused. Generally if the accused was not deprived of his free choice to admit, deny or refuse to answer, the statement may be considered voluntary. (*Garrity v. New Jersey*, 385 U. S. 493, 17 L. Ed. 2d 562, 87 S. Ct. 616.)

In the present case appellant was being held at the Wichita prison farm on numerous traffic violations. He was permitted to use a telephone. Charges had been filed against him on five counts of incest and five counts of carnal knowledge of a female under the age of eighteen years. A week prior to giving the statement in question he was visited by his two sons and Detective Weir. This visit was not on a regular visitor's day. The sons had requested that Detective Weir make arrangements at the prison farm for them to visit their father. Detective Weir made the arrangements and accompanied the sons. A fair evaluation of the evidence indicates that no interrogation of the appellant was attempted by Detective Weir at this time. In response to questions Detective Weir advised those present that each count could carry a maximum penalty of twenty years, making a total possible maximum of 200 years on the ten counts. During this discussion the sons were present. Detective Weir suggested that if the charges were true appellant needed psychiatric help and that Detective Weir would do what he could to get him help.

It appears from appellant's own testimony that after this visit appellant talked with some of the other prison farm inmates. As a result of such conversations he decided that he might be convicted on all ten counts and that it would be better to give a confession or statement in hopes he might be sent to a mental institution for only a few years.

The extrajudicial statement was obtained a week after Detective Weir's first visit to the prison farm. On that occasion Detective Weir first called the farm by telephone and asked the officials if appellant was interested in talking with him. On being advised in the affirmative Detective Weir and Detective Bonnie L. Neeley of the Juvenile Section drove out to the farm and talked with the appellant. Appellant was fully advised of his constitutional rights under the Miranda guidelines. At the beginning of the taped statement he stated he understood that he had a right to remain silent, that anything he said could and would be used against him in a court of law, that he had a right to talk to a lawyer and have him present while being questioned and that if he could not hire a lawyer the court would appoint one for him.

The testimony of events leading up to and surrounding the taking of the statement indicates no threat, promise or coercion was used to obtain the statement. The appellant talked freely and voluntarily.

There was testimony from the officers that they did not promise appellant psychiatric help or suggest he might serve a short time in a mental institution if he gave the statement. The officers were not advised that appellant had previously talked with an attorney. Appellant did not request that an attorney be present. At no time during the interrogation did he refuse to answer questions or request an attorney.

It appears from the evidence that the statement was the product of his free and independent will. After considering his situation and listening to fellow inmates of the prison farm, his free choice was to make the statement and to admit the charges.

When such a choice is freely and knowingly arrived at after considering the alternative courses of action open to him the statement is voluntary. Such has been our holding in regard to the voluntariness of guilty pleas. See *Jones v. State*, 207 Kan. 622, 485 P. 2d 1349. See also *North Carolina v. Alford*, 400 U. S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160.

The trial court found the statement was freely, voluntarily and intelligently given without coercive threat, promise or compulsion. We have carefully reviewed the record before us and there is substantial competent evidence to support the findings of the trial court.

The judgment is affirmed.