No. 46,890

State of Kansas, *Appellee*, v. Lanny C. Riedel, *Appellant*.

(508 P. 2d 878)

Opinion filed
April 7, 1973.

*Wesley M. Norwood,* of Lawrence, argued the cause, and was on the brief for the appellant.

*David Berkowitz,* County Attorney, argued the cause, and *Vern Miller,* Attorney General, and *John Mike Elwell,* of Lawrence, were with him on the brief for the appellee

The opinion of the court was delivered by

Prager, J.: The defendant Lanny C. Riedel was convicted of receiving stolen property under K. S. A. 21-549. This is a direct appeal from that conviction. We will refer to the parties respectively as state and defendant or Riedel. The property stolen consisted of 5600 pounds of atrazine, a chemical herbicide, which was taken from the USS Agri-Chemical warehouse near Lawrence, Kansas. The defendant Riedel was a student at the University of Kansas. During the fall semester of 1969 he worked at the warehouse during September and October. During November and early December 1969, USS Agri-Chemical received large shipments of atrazine. Between 9:30 p. m., December 23, 1969, and 3:10 a. m., December 24, 1969, the atrazine was stolen. The evidence was undisputed that the defendant rented a truck in Lawrence on December 23, 1969, in the morning and brought the truck back to Lawrence on December 27, 1969. Defendant's father testified that the defendant arrived at the family home in Colby, Kansas, in the early hours of December 24. During the following three months defendant made several large sales of atrazine to farmers in the Colby area at $1.75 per pound. The retail price at the time varied between $2.20 and $2.40 per pound.

The Kansas Bureau of Investigation through Agent Charles Murray began investigating the Colby atrazine sales in April 1970.

Having acquired information as to defendant's participation therein, Agent Murray along with the undersheriff of Thomas county went to the Riedel farm on the morning of June 25, 1970, to discuss the sales of atrazine with the defendant. Defendant was not home at the time and the officers left word that they wanted to talk with him about the sales. Later on the same morning Riedel went to the Thomas county sheriff's office in response to the request of Murray. There Murray interrogated the defendant about the atrazine sales. The evidence is undisputed that prior to any interrogation Murray advised Riedel of his rights as required by *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 294, 86 S. Ct. 1602. Agent Murray specifically informed defendant that he would be asked questions in regard to a theft of atrazine and the atrazine sales made by defendant to the farmers in the Colby area. Murray was primarily interested in determining where the atrazine was obtained by defendant. The defendant first told Murray that he had received 78 boxes of atrazine from a man in St Joseph, Missouri, and that he and a friend had hauled it for the man to the Riedel farm. Murray them informed defendant that he had evidence that defendant had sold more than 78 boxes to farmers around Colby and knew that defendant had rented a truck in Lawrence. Thereupon defendant stated that he did not steal the atrazine but agreed to sell it for a man. Riedel admitted that he had rented a truck on December 23 and went with the man to an old barn south of Lawrence where the atrazine was loaded on a truck at about 7:00 p. m. on the night of December 23. In the course of the interrogation the defendant made a number of statements which were highly incriminating and tended to substantiate the position of the state that defendant knew the atrazine was stolen at the time he received it. Defendant stated that he was to make a profit of $1,000 plus his expenses out of the money he received from selling the atrazine. According to Murray defendant stated he knew the deal was fishy "because you just don't get deals like that" and further that he was glad to get it off his conscience because it had been bothering him and he was afraid he would get caught. Murray and the defendant went to lunch and then they returned to the sheriff's office. Murray attempted to get defendant to tell him the name of the man from whom he obtained the atrazine. Murray suggested to defendant that things might be easier for him if he would identify the man. Defendant refused to state the man's name stating that

he thought it was a pretty big outfit and if he gave the man's name, someone might come gunning for him.

Following this interrogation Murray called the authorities in Douglas county and a warrant was issued charging defendant with receiving stolen property. At about 5:30 p. m. on June 25, 1969, Murray and the Thomas county sheriff placed defendant Riedel under arrest. He was incarcerated in the county jail until June 29, 1969. On that date defendant was turned over to the sheriff of Douglas county who flew to Colby to transport defendant from Colby to Lawrence by air. As the plane was about to take off for Lawrence, a conversation took place between defendant Riedel and Rex Johnson, the Douglas county sheriff. Riedel asked if the matter could be taken care of by making restitution. Johnson immediately informed Riedel that he had better not say anything about the case because anything he said could be used against him.

Following his arrest the defendant Riedel was cooperative with the authorities at all times except for his refusal to reveal the name of the man from whom he acquired the atrazine. The case came on for trial in district court on November 30, 1970. At the trial Riedel testified that in November 1969, he was approached by a man, Lester Maxe, at a party in Kansas City, Missouri, concerning his purchasing some atrazine. Maxe and Riedel agreed that Riedel was to receive approximately 100 cases around Christmas to carry to Colby, Kansas, and sell for $1.75 per box. Riedel was to receive for his efforts $1,000 plus expenses and the remainder of the proceeds from the sales was to be paid to Lester Maxe. On the evening of December 22, 1969, Riedel received a telephone call from Maxe and was told to rent a truck the next day. On December 23, 1969, Riedel rented a truck and that evening received another call from Maxe in which Riedel was told to meet Maxe at the Holiday Inn on Highway 59 east of Lawrence. Following a rendezvous at the Holiday Inn the rented truck was driven to a barn in the area of Lone Star Lake. There the cases of atrazine were loaded onto the rented truck. After the truck was loaded the defendant Riedel drove it with the load of atrazine to Colby.

There was a disputed issue of fact as to whether or not the atrazine received by defendant Riedel was in fact the atrazine which had been stolen on the evening of December 23, 1969, from USS Agri-Chemical Company, Inc. The cases were not clearly marked. The defendant Riedel, although admitting receiving the atrazine,

denied his guilt on the basis that he had no prior knowledge that the atrazine was stolen at the time he received it. During the course of trial the defendant objected to the admission into evidence of the incriminating statements which he had made during his interrogation at Colby. After the defendant moved to suppress his statements, the trial court conducted a *Jackson v. Denno* hearing in the absence of the jury. At this hearing the defendant admitted that he had been given a proper *Miranda* warning by Agent Murray prior to his interrogation in Colby and he further testified that all statements that he had made at that time were made voluntarily. The trial court found that the incriminating statements made by the defendant were freely, voluntarily and intelligently given and admitted them into evidence. The jury returned a verdict finding the defendant guilty of receiving stolen property. The defendant's motion for a new trial was overruled and a timely appeal has been brought to this court.

The first three points raised by the defendant on this appeal are concerned with the propriety of the trial court's admission into evidence of the incriminating statements made by the defendant Riedel in Colby. Defendant's first point is that it was improper for the trial court to admit the testimony of Agent Charles Murray as to the incriminating statements made by the defendant on June 25 during the initial stage of the interrogation. These statements related to defendant's belief that the atrazine transaction was a "fishy deal", "that he was glad to get it off of his conscience because it was bothering him and he was afraid he would get caught" and further that defendant had transported the cases of atrazine from Lawrence to Colby. Although conceding that he was given the *Miranda* warning by Agent Murray the defendant contended that he was not specifically advised of the offense he was suspected of committing and therefore his rights were not knowingly and intelligently waived. We find that this contention is without merit. At the time this interrogation took place no charges had been filed and it was impossible for Agent Murray to advise the defendant of the exact charges which might be placed against him. The evidence is undisputed that Agent Murray told the defendant that he was investigating a theft of atrazine and the sales of atrazine by the defendant in the Colby area. In our judgment defendant was adequately informed of the matters about which he was to be interrogated. The trial court went into this matter fully in its pre-

liminary inquiry into the admissibility of the defendant's statements and found that they were freely, voluntarily and intelligently given. On the record before us we find that the trial court findings were based on substantial competent evidence and should be accepted on this appeal. (*State v. Creekmore*, 208 Kan. 933, 495 P. 2d 96.)

The defendant's second complaint of trial error is that it was improper for the trial court to permit the testimony of Agent Murray with regard to incriminating statements made by the defendant in Colby on June 25 and 26, 1970, during the second stage of interrogation. He refers to statements made by defendant following a suggestion of Murray that it might go easier for the defendant if he would tell Murray the name of the man from whom the atrazine was obtained. The defendant Reidel refused to tell who the man was and never did reveal his name until the trial of the case. The only statement that Riedel made in response to the suggestion was that he thought that the man was hooked up with a pretty rough outfit and that he was afraid someone might come gunning for him later on. The thrust of defendant's argument is that the response which he made to Murray's suggestion was involuntarily made because he was induced to make the statement as a result of Murray's promise that it would go easier for him if he did tell Murray who the man was.

The defendant relies upon the provisions of K. S. A. 60-460 which provide in part as follows:

". . . Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

"(*f*) *Confessions.* In a criminal proceeding as against the accused, a previous statement by him relative to the offense charged if, and only if, the judge finds that the accused when making the statement was conscious and was capable of understanding what he said and did, and that he was not induced to make a statement . . . (2) by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same; . . ."

The voluntariness of this statement along with others made by the defendant was considered by the trial court in its preliminary hearing held in the absence of the jury. The issue was the voluntariness of the incriminating statements made by the defendant to be determined from the totality of the circumstances. (*State v.*

*Harden,* 206 Kan. 365, 480 P. 2d 53.) It should again be emphasized that the defendant admitted that *all* the statements made by him at Colby were voluntary. The trial court so found and admitted the statements into evidence. It is obvious here that the defendant's statements were admissible and that defendant's second contention is without merit.

The appellant's third point concerns the statement which he made to the Douglas county sheriff, Rex Johnson, while being transported by airplane from Colby to Lawrence. This statement was not made in the course of any interrogation; the defendant simply asked the sheriff if the charges against him could be taken care of by making restitution. The sheriff immediately advised the defendant that he had better not say anything about the case because anything he said could be used against him. Defendant complains that he was not given another *Miranda* warning by the sheriff prior to this conversation. In *State v. Boyle,* 207 Kan. 833, 486 P. 2d 849, we held:

> "Once law enforcement officers comply with the mandate of *Miranda* by advising one suspected of crime at the threshold of custodial interrogation, the warnings need not be repeated at the beginning of each successive interview." (Syl ¶ 6.)

The rule is again recognized in the more recent case of *State v Hill,* 211 Kan. 239, 505 P. 2d 704. It is clear from the evidence here that Agent Murray properly gave the *Miranda* warning to the defendant prior to interrogation by any law enforcement officer and an additional *Miranda* warning was not required. Further it should be noted that the defendant made the statement on his own volition and not as the result of a custodial interrogation. Immediately following the statement the sheriff advised the defendant not to say anything. Under the circumstances we find no error in the admission of defendant's statement into evidence by the trial court.

The defendant's last point concerns the giving of instruction No. 4 pertaining to the necessity of proving defendant's prior knowledge in order for him to be convicted of receiving stolen property. Defendant's contention is that the court erred in not including in this instruction the statement that the property must have been stolen from USS Agri-Chemical Company on December 23, 1969. An examination of all the instructions given in the case discloses that instruction No. 3 specifically required the state to prove as one of the elements of the offense that the personal property was stolen from and was the property of USS Agri-Chemical Company, Inc.,

of Lawrence, Kansas. Instructions to the jury are to be considered as a whole and not piecemeal, and they are not to be taken out of context. (*State v. Blocker*, 211 Kan. 185, 505 P. 2d 1099.) When we consider all of the instructions together we find that the trial court properly covered the principles of law necessary for the jury to determine the case and we find no error on this point.

The judgment of the court below is affirmed.