**UNITED STATES of America ex rel. Nathan JACKSON, Relator-Appellant,**

v.

**Wilfred L. DENNO, as Warden of Sing Sing State Prison, Ossining, New York, Respondent-Appellee.**

No. 402, Docket 27662.

United States Court of Appeals
Second Circuit.

Argued Aug. 21, 1962.

Decided Nov. 2, 1962.

Certiorari Granted Jan. 21, 1963.
See 83 S.Ct. 553.

Daniel G. Collins, New York City, for relator-appellant.

William I. Siegel, Asst. Dist. Atty., Kings County, N. Y. (Edward S. Silver, Dist. Atty., Kings County, N. Y.), for respondent-appellee.

Before LUMBARD, Chief Judge, and MOORE and MARSHALL, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Appellant, under sentence of death as a result of a judgment of conviction of first degree murder in the County Court of Kings County, New York, appeals from an order of the District Court for the

Southern District of New York, denying his application for a writ of habeas corpus. State remedies have been exhausted.

The primary appellate question is whether appellant was deprived of his constitutional right to a fair trial because of the introduction into evidence of a statement by him which was stenographically transcribed, sometimes herein referred to as a confession. The answer turns upon the circumstances under which it was given. We find no such deprivation and affirm the order.

In the early morning of June 14, 1960, appellant while escaping from the scene of an armed robbery committed by him shot and killed a police officer. He was wounded by the police officer in the exchange of gunfire and sought hospitalization. Shortly after admission to the hospital while in the X-ray room and at approximately 2:00 A.M., appellant said to a detective, "I shot the colored cop. I got the drop on him." At 3:55 A.M., an assistant district attorney took a question and answer statement from appellant, immediately after appellant had been given "demerol", a drug with pain alleviating properties, as a pre-anesthetic, pre-operative procedure. There was medical testimony that except perhaps in the case of children demerol "does not manifest its action" until about fifteen minutes after injection. The defense offered no proof contradicting the prosecution's medical witness on this point. Nor was there any dispute that the questioning of appellant lasted no more than about five minutes.

On the trial appellant was represented by an attorney, a former judge, experienced in the defense of criminal cases. The statement (Exhibit 14) was offered in evidence during the testimony of a stenographer employed by the District Attorney of Kings County. The trial record reads: "The Court: Any objection? Mr. Healy [appellant's counsel], No." The Court inquired as to whether appellant's counsel had a copy of the statement and was advised by counsel in the affirmative. The statement contained appellant's version of the events leading up to the shooting. Appellant said in substance that in the early morning he went to a hotel with a woman to get a room but not with an original intent to do a "stickup"; that when he was recognized by the desk clerk he decided to rob her which at gun-point he proceeded to do; that he herded the clerk and others into a room; that on the street he was accosted by a police officer who insisted that appellant accompany him; that he threw the officer to the ground; that the officer drew his gun but appellant "got mine out first" and in the firing he (appellant) "beat him to it." On cross-examination appellant's counsel brought out the five-minute duration (3:55 A.M. to 4:00 A.M.) of the statement and appellant's claim during that period that he could not go on.

Appellant took the stand in his own defense. He gave a detailed account of the events of the day, his drinking, his going to the hotel with the woman, the robbery, his struggle with the police officer, the officer reaching for his gun but appellant getting his gun out first, the exchange of shots and the hospitalization. Appellant claimed that, although they gave him some water once, he was told that he could not have any more unless he answered questions.

Upon rebuttal, the prosecution offered medical testimony that demerol would not take effect for about fifteen minutes. In addition, testimony was given by two hospital attendants present during the period involved that appellant was not told that water would be refused unless he answered questions. Their testimony was that they told him that hospital procedure required that they not give water to pre-operative patients [the operation commenced at 5:00 A.M.]. The events at trial indicate that it was the decision of defendant's skilled counsel (1) not to object to the introduction of appellant's statement and (2) to have appellant testify in his own behalf. The prosecution had the right "to rely on the decisions made by counsel and the defendant himself." (United States v. Richmond, 2

Cir., 1961, [Reid v. Richmond] 295 F.2d 83, 90, rehearing denied, October 11, 1961, certiorari denied, 368 U.S. 948, 82 S.Ct. 390, 7 L.Ed.2d 344, rehearing denied 368 U.S. 979, 82 S.Ct. 485, 7 L.Ed.2d 441, leave to file second petition for rehearing denied, 369 U.S. 881, 82 S.Ct. 1145, 8 L.Ed.2d 285 (1962)).

Despite the admission of appellant's statement without objection, the trial court, in effect, preserved for appellant the right to attack it because after appellant had rested and during rebuttal the trial court said, "Judge Healy raised the point in cross-examination that sedation of a kind was administered to the patient. * * * And therefore he is going to contend and he does now that the confession hasn't the weight the law requires. Is that your purpose?" To this counsel said, "That's correct".

The prosecution then called witnesses limited to this point, as abovementioned, denied that water was refused unless questions were answered.

The summation of appellant's counsel clearly discloses his trial strategy both as to his unwillingness to object to the statement and as to his calling appellant to the stand. He must have been convinced as a result of his almost fifty years of experience that he would serve his client best if he did "not ask you [the jury] to acquit Jackson" but to argue it "on a proposition of law, that any guilt that is his is murder in the second degree, or manslaughter * * *." In summary, his approach was to convince the jury, if he could, that the killing was "without the premeditation" (murder in the second degree) or was manslaughter "where there is no need for premeditation or deliberation or intent * * *." Counsel's "theory of defense" against felony murder was to separate the felony (robbery), which he argued had terminated, from the killing during appellant's attempt to escape. This, counsel argued, was "the crux of the defense". The balance of the summation as far as material to this point was devoted to a thorough analysis of the facts designed to convince the jury that the killing was without premeditation and deliberation. Counsel also attempted to sway the jury to his "unpremeditated" theory in his explanation that he "wanted you [the jury] to hear everything in the case," and appellant to have "his day in court". By calling him he was able to bring out appellant's drinking which he argued bore upon his mind and intent at the time of the shooting. The final plea to the jury was that when "the query is propounded to you as to how you find the defendant Jackson, guilty or not guilty, you will say either guilty of murder in the second degree or manslaughter in the first degree."

The trial court in a lengthy charge instructed the jury with clarity and accuracy as to the necessary elements of murder, first (common law) and second degrees, manslaughter, first and second degrees, and felony murder. As to the statement or confession, the court charged that even if the statement were found to be made by appellant and to be true and accurate "before you may use it, the law still says you must find that it is voluntary, and the prosecution has the burden of proving that it was a voluntary confession." The court then instructed the jury as to their fact-finding function with respect to the three elements (1) whether the statement was made by appellant; (2) whether it was voluntary; and (3) whether it was true and accurate, adding that if it were found to be involuntary that they were to exclude it from the case. Only one exception to the court's charge was taken by appellant's counsel, and this was unrelated to appellant's statement. Of appellant's requests to charge, counsel asked that the jury be instructed that in determining whether the statement was voluntary they had a right to take into consideration appellant's physical condition. The court replied, "I did exactly that", and referred to his charge on this point which reads:

"Jackson testified he was shot. He was under a sedative. He said he was refused water unless he answered the questions as they wanted

him to answer them. He said he remembers some questions and answers, and denied others. He had no recollection as to some questions and answers. He said that the statement which the District Attorney claims to be a confession was obtained from him in violation of law."

The jury returned a verdict of first degree murder with no recommendation. In the New York Court of Appeals, the judgment of conviction was affirmed without opinion (Jackson v. New York, 10 N.Y.2d 780, 219 N.Y.S.2d 621, 177 N.E.2d 59); motion for reargument denied (10 N.Y.2d 885, 223 N.Y.S.2d 1027, 179 N.E. 2d 717); motion to amend the remittitur granted to show that questions under the Constitution of the United States were passed upon, viz., possible coercion and physical condition at the time of taking the statement (People v. Jackson, 10 N.Y. 2d 816, 221 N.Y.S.2d 521, 178 N.E.2d 234); certiorari was denied by the Supreme Court (368 U.S. 949, 82 S.Ct. 390, 7 L.Ed.2d 344) as was a further motion for reargument in the New York Court of Appeals (11 N.Y.2d 798, 227 N.Y.S.2d 1025, 181 N.E.2d 854). A petition for a writ of habeas corpus was then sought in the District Court. From the denial of the writ, this appeal has been taken.

The district court examined the entire state record (823 printed pages) to determine whether the state processes had given full consideration to the issues and had resulted in any denial of constitutional rights. The court concluded that it had thereby been afforded an adequate opportunity to weigh the sufficiency of the allegations and the evidence. Hence, it found that there was no necessity for holding a hearing. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1952). In its opinion it carefully analyzed the facts and circumstances relating to appellant's statement and the trial court's charge with respect thereto. Its conclusion was that "There is no good reason to find that the confession of the defendant was involuntary, or that the court's instructions to the jury on the

question of voluntariness were inadequate, erroneous or prejudicial, or that the New York procedure for determining the voluntariness of confessions is violative of due process as a matter of law."

 The scope of federal review and the applicable principles thereon are sufficiently well established so as not to require a detailed restatement but only a practical application to the facts. The decisions of the Supreme Court "have made clear that convictions following the admission into evidence of confessions which are involuntary, i. e., the product of coercion, either physical or psychological, cannot stand." Rogers v. Richmond, 365 U.S. 534, 540, 81 S.Ct. 735, 5 L.Ed.2d 760. Nor is it a "permissible standard" for admission to take "into account the circumstances of probable truth or falsity." (p. 543, 81 S.Ct. p. 740). As the Supreme Court said in Rogers, the question is "whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth." (p. 544, 81 S.Ct. p. 741). Furthermore, if a confession "was in fact involuntary, the conviction cannot stand, even though the evidence apart from that confession might have been sufficient to sustain the jury's verdict." (Stroble v. California, 343 U.S. 181, 190, 72 S.Ct. 599, 96 L.Ed. 872 (1952); Malinski v. New York, 324 U.S. 401, 402, 404, 65 S.Ct. 781, 89 L.Ed. 1029 (1945); Lyons v. Oklahoma, 322 U.S. 596, 597, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944).)

 Adhering to these standards, the district court and this court have examined the entire state record. The facts surrounding the giving of appellant's statement are undisputed with one exception. The so-called statement or confession was given over a period of five minutes (3:55 A.M.–4:00 A.M.) and consisted of questions by an assistant district attorney and answers by appellant. No

claim was made by appellant that any physical force was used or threatened or that the statement was the result of deception, ruse, false promises or guile. The questioning was not conducted in a police station with the potentially menacing presence of many police officers or conducted over an interminable period by a series of inquisitors. To the contrary the statement was given to a stenographer in a hospital room where appellant was in bed. The only dispute in testimony is found in appellant's claim that if he wanted some more water ("They gave me some water once") he could not have it until he answered the questions "the way they wanted me to answer them". In contradiction, the stenographer, a nurse's aide and a practical nurse who were present, all testified that no such conditions were imposed. The testimony was that the refusal of more water was because of the mandatory requirement of no food or water to any patient at such a pre-operative stage.

With the entire state court record before us, the court is clearly convinced that there are no facts which tend to show that the appellant's statement was "not freely self-determined". The court is buttressed in this conviction by the fact that appellant took the stand and recited at length and with the greatest particularity the events of June 13th and 14th, 1960. Had any coercion, physical or psychological, been exerted, would he not have been the first to mention it? Yet the only intimation of any inducement to answer questions are the flatly contradicted "more water" and the wanting to be "left alone" claims.

The reliance which appellant places upon the injection of demerol as possibly causing a "loss of will-power" is not well founded. His hypothesis is "if the drug —had taken effect at the time he confessed—." The undisputed proof was that any effect would not have commenced until at least ten minutes after the statement had been concluded. Although appellant had full opportunity to offer proof to the contrary if such existed, he did not

do so. Griffith v. Rhay, 9 Cir., 1960, 282 F.2d 711, although it discussed demerol which had been frequently administered to the defendant there for several days before he gave his statement, was decided upon the specific ground of the defendant's right to the assistance of counsel. The findings of the district court that oral admissions and the signed confession "were the result of his free and voluntary act" were not the basis of the reversal.

■ Appellant contends that the well-known New York procedure for determining the voluntariness of confessions is not in accord with the requirements of due process and that its use here vitiates the conviction. By this procedure, unless the judge finds that as a matter of law a confession is involuntary, he submits the question of voluntariness to the jury, with instructions that the confession be considered only if it is found to be voluntary. This procedure was approved by the Supreme Court in Stein v. New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), and has not been disturbed by later rulings. See e. g., Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) ; Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975, (1958). Although ordinarily the procedure includes a preliminary hearing as to admissibility, so that a confession can be excluded if found by the judge to be involuntary, the absence of such a hearing in this case is not error, since counsel for the defendant was asked explicitly whether he objected to use of the confession and he replied explicitly that he did not. To hold otherwise would, in effect, be to declare that all out-of-court statements of defendants made to officials connected with the discovery or prosecution of crimes are presumptively involuntary and can be offered in evidence only following a hearing. There is no basis in fact or law for such a presumption.

The evidence here establishes that all the required safeguards of legal procedure have been afforded to the appellant.

The order denying the writ is affirmed.