No. 54,487

State of Kansas, *Appellee,* v. Wiley James Miles, *Appellant.*

(662 P.2d 1227)

Opinion filed April 29, 1983.

*Gordon R. Olson,* of Olson & Smith, of Sabetha, argued the cause and was on the brief for the appellant.

*William C. O'Keefe,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal from the District Court of Nemaha County, Kansas where the defendant was convicted of possession of marijuana (K.S.A. 1982 Supp. 65-4127b[a] [3]) and possession of heroin (K.S.A. 65-4127a). The defendant was originally sentenced to not less than 10 nor more than 30 years; the sentence was later modified to not less than 5 nor more than 20 years. Defendant has appealed.

The facts are as follows: In the early morning hours of October 24, 1981, Officer Kirwin pulled behind the defendant's car on Highway 75. After observing the defendant's car cross the center line twice, Officer Kirwin turned on his lights and stopped the defendant's car. The defendant was the only occupant of the car. When Officer Kirwin approached the car he noticed the smell of marijuana. Asking the defendant to exit the vehicle, the officer shined his light in the ashtray and saw what appeared to be a marijuana cigarette butt. Officer Kirwin asked the defendant if he could look into the car; receiving permission, he seized the marijuana butt and warned the defendant of his *Miranda* rights. When asked to identify the item, the defendant stated that it was a marijuana cigarette butt. Defendant then reached into his shirt pocket and pulled out another cigarette which he identified as a marijuana cigarette. Officer Kirwin then asked if there were additional marijuana cigarettes in the car. Defendant replied "No" and then gave the officer permission to search the car. Officer Kirwin found an additional marijuana cigarette butt and a blue shaving kit on the floor of the car. Defendant stated that the kit was his. Officer Kirwin took the kit back to his car and had the defendant open the kit. Officer Kirwin found a plastic bag of marijuana seeds and individually wrapped aluminum foil

packets. The officer opened one of the packets and saw a brown powder which he suspected to be heroin.

Terry L. Koch, a chemist for the Kansas Bureau of Investigation, examined the evidence. At the trial he identified one of the cigarettes as containing marijuana and testified that heroin was contained in the foil packets. From his conviction defendant appeals.

Defendant raises fourteen issues in his appeal. It would not be productive in this opinion to set out each of the numerous issues raised and discuss them individually. It is sufficient to relate each point has been individually considered, and no error of substance has been found. Two issues numbered ten and fourteen by the appellant are of such import they merit discussion.

K.S.A. 22-3215 is the defendant's statutory right to suppress a confession or admission given by the defendant on the grounds that a statement is not admissible as evidence. It provides:

"(1) Prior to the preliminary examination or trial a defendant may move to suppress as evidence any confession or admission given by him on the ground that it is not admissible as evidence.

"(2) The motion shall be in writing and shall allege the grounds upon which it is claimed that the confession or admission is not admissible as evidence.

"(3) If the motion alleges grounds which, if proved, would show the confession or admission not to be admissible the court shall conduct a hearing into the merits of the motion.

"(4) The burden of proving that a confession or admission is admissible shall be on the prosecution.

"(5) The issue of the admissibility of the confession or admission shall not be submitted to the jury. The circumstances surrounding the making of the confession or admission may be submitted to the jury as bearing upon the credibility or the weight to be given to the confession or admission.

"(6) The motion shall be made before preliminary examination or trial, unless opportunity therefor did not exist or the defendant was not aware of the ground for the motion, but the court in its discretion may entertain the motion at the preliminary examination or the trial."

The motion to suppress a confession or admission under K.S.A. 22-3215 is available only to the defendant.

A second method of determining the admissibility of a defendant's confession or admission is the *Jackson v. Denno* hearing. The *Jackson v. Denno* hearing can be requested by (1) the defendant, (2) the State, or (3) the court on its own motion prior to or during a trial. A motion to suppress (K.S.A. 22-3215) or a *Jackson v. Denno* hearing raises the same issue, therefore there is no requirement that the court conduct both a hearing on the

motion to suppress (K.S.A. 22-3215) and a *Jackson v. Denno* hearing on the same facts.

June 22, 1964, the United States Supreme Court handed down its decision in *Jackson v. Denno*, 378 U.S. 368, 12 L.Ed.2d 908, 84 S.Ct. 1774 (1964), 1 A.L.R.3d 1205. The facts were summarized as follows:

"Under the New York procedure concerning determination of the voluntariness of a confession offered by the prosecution, the trial court excludes it if in no circumstances it could be deemed voluntary, but leaves to the jury the ultimate determination of its voluntary character, as well as its truthfulness, if the evidence presents a fair question as to its voluntariness. In compliance with this procedure, a New York state court, in a prosecution for murder, submitted to the jury, along with the other issues, the question of the voluntariness of a confession obtained from petitioner while he was hospitalized and after he had been given doses of demerol and scopolamine. Petitioner was convicted and his conviction was affirmed by the New York Court of Appeals, the United States Supreme Court denying certiorari. His petition for habeas corpus was denied in the United States District Court for the Southern District of New York (206 F Supp 759), and the Court of Appeals for the Second Circuit affirmed (309 F 2d 573).

"On certiorari, the United States Supreme Court reversed and remanded the case to the District Court. In an opinion by White, J., expressing the views of five members of the Court, it was held that (1) the New York procedure described above violated the due process clause of the Fourteenth Amendment and that the contrary decision in Stein v New York, 346 US 156, 97 L Ed 1522, 73 S Ct 1077, should be overruled; (2) a jury cannot be assumed to have reliably found a confession voluntary where it also determines its truthfulness; (3) the undisputed evidence in the record did not show the involuntariness of the confession, in view of the state's evidence that the drugs neither had nor could have had any effect upon petitioner at all; (4) petitioner was entitled to a hearing in the state courts with a view to determining the voluntariness of the confession; (5) petitioner was entitled to a new trial only if the hearing in the state court resulted in a determination that the confession was not voluntary; and (6) the District Court should allow the state a reasonable time to afford petitioner a hearing or a new trial, failing which petitioner was entitled to his release.

"Black, J., with the concurrence of Clark, J., dissented from the holdings of the Court under (1), (2), and (5). Black, J., also dissented from the holding of the Court under (3), expressing the view that the confession was given under circumstances that were inherently coercive.

"Clark, J., dissenting, expressed the view that the constitutionality of the New York procedure was not ripe for decision, but that in any event he joined the dissents of the other Justices.

"Harlan, J., joined by Clark and Stewart, JJ., dissented from the holdings of the Court under (1) and (2)." 12 L.Ed.2d 908-09.

## Justice White, writing for a splintered majority, stated:

"It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an

involuntary confession, without regard for the truth or falsity of the confessions, *Rogers v. Richmond,* 365 U.S. 534 [5 L.Ed.2d 760, 81 S.Ct. 735 (1961)], and even though there is ample evidence aside from the confession to support the conviction. *Malinski v. New York,* 324 U.S. 401 [89 L.Ed. 1029, 65 S.Ct. 781 (1945)]; *Stroble v. California,* 343 U.S. 181 [96 L.Ed. 872, 72 S.Ct. 599 (1952)]; *Payne v. Arkansas,* 356 U.S. 560 [2 L.Ed.2d 975, 78 S.Ct. 844 (1958)]. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness . . . ." 378 U.S. at 376-77.

"Expanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne — facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative. The overall determination of the voluntariness of a confession has thus become an *exceedingly sensitive task, one that requires facing the issue squarely,* in illuminating isolation and unbeclouded by other issues and the effect of extraneous but prejudicial evidence. See *Wilson v. United States,* 162 U.S. 613 [40 L.Ed. 1090, 16 S.Ct. 895 (1896)]; *United States v. Carignan,* 342 U.S. 36 [96 L.Ed. 48, 72 S.Ct. 97 (1951)]; *Smith v. United States,* 348 U.S. 147 [99 L.Ed. 192, 75 S.Ct. 194 (1954)]. Where pure factual considerations are an important ingredient, which is true in the usual case, appellate review in this Court is, as a practical matter, an inadequate substitute for a full and reliable determination of the voluntariness issue in the trial court and the trial court's determination, *pro tanto,* takes on an increasing finality. The procedures used in the trial court to arrive at its conclusions on the coercion issue progressively take on added significance as the actual measure of the protection afforded a defendant under the Due Process Clause of the Fourteenth Amendment against the use of involuntary confessions. These procedures must, therefore, be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." 378 U.S. at 390-91.

"We turn to consideration of the disposition of this case. Since Jackson has not been given an adequate hearing upon the *voluntariness of his confession he must* be given one . . . ." 378 U.S. at 391.

"It is both practical and desirable that in cases to be tried hereafter a proper determination of voluntariness be made prior to the admission of the confession to the jury which is adjudicating guilt or innocence." 378 U.S. at 395.

All federal courts and the courts of the fifty states of the United States determined *Jackson v. Denno* required a hearing on the voluntariness of a confession prior to its admission into evidence. Failure to conduct the *Jackson v. Denno*-type hearing required (1) a new trial, or (2) a remand of the case back to the trial court for a post-trial hearing to determine if the confession was voluntary or involuntary; if involuntary the defendant was entitled to a new trial.

In *State v. Milow,* 199 Kan. 576, 433 P.2d 538 (1967), following the rationale of *Jackson v. Denno,* this court stated:

"The accused in a criminal proceeding was charged with burglary in the second degrèe and larceny, and a purported confession taken on a tape recording was offered in evidence, whereupon the trial court proceeded to hear evidence and decide as a preliminary matter whether the confession was freely and voluntarily made; but the trial court in such collateral proceeding heard only the testimony of the detective who took the statement and denied the accused the right to call another detective as a witness or to testify himself on the voluntariness of the confession. On appeal it is *held:* Under the present state of the record the admission of such confession into evidence by the trial court, over the accused's objection, was erroneous in that the trial court failed to consider the totality of the circumstances in making a determination on the voluntariness of the confession." 199 Kan. 576, Syl. ¶ 2.

"Where a person is on trial for a crime, evidence of a confession of guilt of the crime previously made by such person is in general not admissible unless it appears that the confession was entirely voluntary. If such confession is made while the party is under arrest or charged with a crime, evidence of the confession is not admissible on the trial unless it is made to clearly appear that the party was fully advised of his rights, and that after being so advised, the confession of guilt was freely and voluntarily made under circumstances that afforded no undue influence in procuring the confession. Furthermore, the burden of proof is upon the state to show that any confession of a crime by the accused was freely and voluntarily made *before the confession is admissible in evidence.* In this connection it is the duty of the trial court, before admitting the confession in evidence, to hear evidence and decide as a preliminary matter whether the confession was freely and voluntarily made without force or coercion. (*State v. Seward,* 163 Kan. 136, 181 P.2d 478 [on rehearing, 164 Kan. 608, 191 P.2d 743]; and *State v. McCarther,* 197 Kan. 279, 416 P.2d 290.)

"A situation similar to that in the instant case arose in *State v. Seward,* supra, where the trial court admitted a writing in evidence which constituted a confession, denying the defendant's counsel a right to show by witnesses that the offered writing was not a declaration against interest or the confession of the accused. The trial court advised counsel that his offer would be accepted when the defendant was putting on his case. The jury was thereupon called in and the witness permitted to identify the paper, whereupon the trial court overruled the objection and admitted the confession. In substance the trial court refused to consider, before overruling the objection to the confession, all of the evidence as to whether the confession was freely and voluntarily made without force or coercion. The court there reversed a conviction holding, among other things, it was the duty of the trial court, before admitting the confession into evidence, to hear evidence and decide as a preliminary matter whether the confession was freely and voluntarily made without force or coercion.

"In the *Seward* case an extended discussion was undertaken analyzing cases from other jurisdictions concerning the burden of proof where a confession is offered in evidence, and instructions where a confession has been properly received in evidence. Reference is made to the *Seward* opinion as apropos to the situation at hand.

"In *Andrews v. Hand,* 190 Kan. 109, 372 P.2d 559, 371 U.S. 880, 9 L.Ed.2d 117, 83 S.Ct. 152, it was said:

" 'Coercion in obtaining a confession from an accused can be mental as well as physical. (*Payne v. Arkansas,* 356 U.S. 560, 2 L.Ed.2d 975, 78 S.Ct. 844; *Spano v. New York,* 360 U.S. 315, 3 L.Ed.2d 1265, 79 S.Ct. 1202; *Blackburn v. Alabama,* 361 U.S. 199, 4 L.Ed.2d 242, 80 S.Ct. 274.) The Fourteenth Amendment forbids "fundamental unfairness in the use of evidence, whether true or false" (*Lisenba v. California,* 314 U.S. 219, 236, 86 L.Ed. 166, 180, 62 S.Ct. 280), and the range of inquiry as to whether a confession was involuntarily obtained is broad. Whether a confession was freely or involuntarily given is based upon consideration of "the totality of the circumstances" (*Fikes v. Alabama,* 352 U.S. 191, 197, 1 L.Ed.2d 246, 251, 77 S.Ct. 281), and "where there is a genuine conflict of evidence great reliance must be placed upon the finder of fact." (*Blackburn v. Alabama,* supra.) . . .' (p. 117.)" 199 Kan. at 583-84.

"The points suggested by the record in the instant case were squarely considered by the United States Supreme Court in *Jackson v. Denno,* 378 U.S. 368, 12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R. 3d 1205. In *Andrews v. Hand,* supra, the Kansas court in capsule form (heretofore quoted) has recognized the rules upon which the United States Supreme Court elaborated in considerable detail in *Jackson v. Denno,* supra. It there held the procedure in the state of New York to determine the voluntariness of a confession violated the due process clause of the Fourteenth Amendment to the Federal Constitution.

"Under New York procedure, concerning a determination of the voluntariness of a confession offered by the prosecution, the trial court excludes it if under no circumstances could the confession be deemed voluntary, but leaves to the jury the ultimate determination of its voluntary character, as well as its truthfulness, if the evidence presents a fair question as to its voluntariness. In a prosecution for murder in *Jackson v. Denno,* supra, a New York state court in compliance with the foregoing procedure submitted to the jury, along with other issues, the question of the voluntariness of a confession obtained from the petitioner while he was hospitalized and after he had been given doses of demerol and scopolamine. The petitioner was convicted and his conviction affirmed by the New York Court of Appeals, the United States Supreme Court denying certiorari. Later his petition for habeas corpus was denied in the United States District Court for the Southern District of New York (206 F. Supp. 759), and the Court of Appeals for the Second Circuit affirmed (309 F.2d 573)." 199 Kan. at 585-87.

"Certainly, where a trial court is obligated to consider the totality of the circumstances in determining whether a confession is voluntarily given, more is embraced than simply hearing the state's evidence, or only a part of it, in making such determination. Here the trial court in the collateral proceeding refused to permit counsel for the appellant to call Detective Andrew Taylor, who had interrogated the appellant on occasions prior to the taking of the taped confession, and the trial court also denied the appellant a right to testify, holding that the appellant's testimony was defensive matter for the jury to hear and determine at the proper time.

"Under Kansas law, after a confession is admitted into evidence as being voluntary, the question of voluntariness is not open for the jury to consider, and a trial court does not err in refusing to give an instruction on the issue of voluntariness. (*State v. Robinson,* 182 Kan. 505, 322 P.2d 767; and *State v.*

*Freeman,* 195 Kan. 561, 408 P.2d 612, cert. den. 384 U.S. 1025, 16 L.Ed.2d 1030, 86 S.Ct. 1981.) The trial court has a duty, however, after deciding that a confession has been voluntarily made, and admitted into evidence, to instruct the jury that it should consider the truth or falsity of the confession along with the other evidence in the case *(State v. Seward,* supra), and evidence bearing upon the credence to be given a confession is admissible. (K.S.A. 60-408.)

"To the extent that Syllabus ¶ 1 and the corresponding portion of the opinion in *State v. Jones,* 198 Kan. 30, 422 P.2d 888 (followed in *State v. Phinis,* 199 Kan. 472, 430 P.2d 251), is inconsistent with the law stated in this opinion, as exemplified in Syllabus ¶ 3, it is disapproved. The statutory law of this state, as construed by our decisions, must yield when it is not in harmony with rights guaranteed to our citizens by the Fourteenth Amendment to the Federal Constitution as interpreted by the United States Supreme Court. (See, K.S.A. 60-408.)

"We turn now to a consideration of the disposition of this case. Since the appellant has not been given an adequate hearing upon the voluntariness of his confession, he must be given one.

"This is not a case where the facts concerning the circumstances surrounding the confession are undisputed, and the task is only to judge the voluntariness of the confession based upon the clearly established facts in accordance with proper constitutional standards. Here there are substantial facts in dispute. Whether the appellant is entitled to relief depends upon how these facts are resolved, for if the witnesses for the state are to be believed we cannot say the appellant's confession was involuntary, whereas if the appellant's version of the facts is accepted the confession was involuntary and inadmissible.

"At this point the appellant has not yet had an adequate evidentiary hearing productive of reliable results, to which he is constitutionally entitled, concerning the voluntariness of his confession. It does not follow, however, that he is automatically entitled to a complete new trial including a retrial on the issue of guilt or innocence. His position before the trial court, and here, is that the issue on the admissibility of his confession should not have been decided by the trial court summarily, or by the convicting jury, but should have been determined in a proceeding separate and apart from the jury which determined his guilt or innocence. He is entitled to such a hearing in the trial court, but if at the conclusion of such a collateral evidentiary hearing on the issue of coercion, it is determined the appellant's confession was voluntarily given, admissible in evidence, and proper for the jury to consider, a new trial is unnecessary, because the appellant has already been tried by a jury with the confession placed before it and has been found guilty. Under these circumstances, if the conviction rested upon the confession there is no constitutional prejudice to the appellant. If the jury relied upon it, it was entitled to do so. On the other hand, if the trial court at a properly conducted collateral proceeding determines the facts upon all the evidence, and decides the appellant's confession was involuntary, there must be a new trial on the issue of guilt or innocence without admission of the confession into evidence. (See *Jackson v. Denno,* supra.)" 199 Kan. at 589-90.

*Milow* was followed in *Baker v. State,* 204 Kan. 607, 464 P.2d 212 (1970). The Court of Appeals of Kansas in *State v. Shuck-*

*ahosee,* 2 Kan. App. 2d 717, 587 P.2d 923 (1978), restated the understood requirements of *Jackson v. Denno.*

June 23, 1977, the United States Supreme Court handed down its decision in *Wainwright v. Sykes,* 433 U.S. 72, 53 L.Ed.2d 594, 97 S.Ct. 2497 (1977). John Sykes was tried for third-degree murder in a Florida court. During the trial an oral statement previously made by Sykes to police officers, admitting that he had shot the deceased from the front porch of his trailer home, was admitted into evidence through the testimony of two officers who had heard it. At no time during the trial were any of Sykes' statements challenged by his counsel on the ground that Sykes had not understood the *Miranda* warnings given to him by the police, nor did the trial judge on his own motion question their admissibility or hold a *Jackson v. Denno* hearing on that issue. The issue was not raised on appeal. Respondent subsequently filed in the trial court a motion to vacate his conviction, and filed petitions for habeas corpus in the state appellate courts, apparently for the first time challenging the voluntariness of his statements. Failing in the Florida court, Sykes initiated an action in the United States District Court under 28 U.S.C. § 2254, asserting the inadmissibility of his statements by reason of his lack of understanding of the *Miranda* warnings. That court ruled that *Jackson v. Denno* (1964), required a hearing in a state criminal trial prior to the admissions of an inculpatory out-of-court statement, and Sykes had not lost his right to assert such a claim by failing to object at trial or on direct appeal. The State of Florida appealed the decision to the United States Court of Appeals for the Fifth Circuit, which upheld the United States District Court requiring a hearing on the issue of voluntariness despite the Florida Rule of Criminal Procedure "contemporaneous objection" rule which barred a subsequent review of objections or claims not raised before the time of the original trial.

The United States Supreme Court reversed, holding:

"Respondent also urges that a defendant has a right under *Jackson v. Denno,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R. 3d 1205] (1964), to a hearing as to the voluntariness of a confession, even though the defendant does not object to its admission. But we do not read *Jackson* as creating any such requirement. In that case the defendant's objection to the use of his confession was brought to the attention of the trial court, *id.,* at 374, and n. 4, and nothing in the Court's opinion suggests that a hearing would have been required even if it had not been. To the contrary, the Court prefaced its entire discussion of the merits of the case with a statement of the constitutional rule that was to prove dispositive — that a defendant has a 'right at some stage in the proceedings *to object* to the use of the

confession and to have a fair hearing and a reliable determination on the issue of voluntariness. . .. .' *Id.,* at 376-377 (emphasis added). Language in subsequent decisions of this Court has reaffirmed the view that the Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession.

"We therefore conclude that Florida procedure did, consistently with the United States Constitution, require that respondent's confession be challenged at trial or not at all, and thus his failure to timely object to its admission amounted to an independent and adequate state procedural ground which would have prevented direct review here." *Wainwright v. Sykes,* 433 U.S. at 86-87.

A defendant is entitled to a hearing out of the presence of the jury for the purpose of determining the issue of voluntariness. This determination should be made without regard to the truth or falsity of the confession. Under the Kansas law there are two methods for determining the voluntariness of a confession: (1) K.S.A. 22-3215, motion to suppress confession or admission, or (2) a *Jackson v. Denno*-type hearing. Either method of testing the voluntariness of a confession is sufficient. A defendant is entitled to have his confession tested by one or the other but not both. When a confession is challenged, then the prosecution has the burden of proving the confession is admissible by a preponderance of the evidence. It is incumbent upon the defendant to request a hearing to test the voluntariness of a confession.

A defendant during a trial has the right to object to the introduction of any confession or admission on the issue of voluntariness. If there has been a prior determination under K.S.A. 22-3215 or a *Jackson v. Denno*-type hearing on the same facts and issues and the confession or admission has been determined voluntary, there is no requirement that the hearing be repeated. Where there has been no hearing prior to trial on the voluntariness of a confession then the court, outside the presence of the jury at the time of trial, determines if the confession or admission is voluntary.

Kansas has a "contemporaneous objection" rule similar to Florida. K.S.A. 22-3417 provides:

"Formal exceptions to rulings or orders of the court are unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

One attempting to exclude evidence, whether by objection or

motion, has a duty to indicate the specific grounds so as to alert the court as to the question raised. Absent some objection or motion by the defendant to the admission of his confession or admission, the United States Constitution does not require a hearing on the voluntariness to be held prior to its admission into evidence.

We therefore conclude that Kansas procedure does, consistent with the United States Constitution, require that appellant's confession be challenged prior to or during the trial or not at all. The appellant's failure to request a hearing or timely object to the admission of his confession waives his right to raise that issue for the first time on appeal unless the opportunity to object did not exist. We, therefore, depart from our prior requirement, distinguish *State v. Milow*, 199 Kan. 576, 433 P.2d 538 (1967), and overrule *State v. Shuckahosee*, 2 Kan. App. 2d 717, 587 P.2d 923 (1978), and the cases that follow its holding.

Defendant finally contends that to enhance the penalty, as provided in K.S.A. 65-4127a, any prior violation must be a violation contained within the Kansas version of the Uniform Controlled Substances Act.

Count 1 of the complaint filed by the State stated the charge:

"That on or about the 24th day of October, 1981, the said Wiley James Miles, within the above and within named County and State, then and there being, did then and there contrary to the statutes of the State of Kansas unlawfully, feloniously and willfully possess or have under his control an opium derivative, to-wit: heroin, other than as authorized in the Kansas Controlled Substances Act or K.S.A. 65-4105 (c) (10), defendant having been convicted of possession of heroin previously. Contrary to K.S.A. 65-4127 (a) [*sic* 65-4127a]. Class B Felony. Penalty Sections: K.S.A. 21-4501 (b) and K.S.A. 21-4503 (1) (a)."

The complaint filed against the defendant advised of the specific offense with which he was charged (illegal possession or control of heroin), the seriousness thereof (a felony), and the penalty (Class B felony), because of the defendant's prior conviction for sale of heroin. Defendant's prior conviction for sale of heroin in October, 1972, occurred in the State of Iowa.

Defendant reasons that his conviction for possession of heroin under the Kansas Uniform Controlled Substances Act is not a second or subsequent offense since the Iowa conviction was not a violation of the Kansas Act. Defendant claimed only a prior conviction of the present Kansas Act can be used to en-

hance the sentence set forth in K.S.A. 65-4127a for the present conviction.

The primary purpose of a uniform state law is to provide, as far as possible, uniform laws on the subject involved that would be common to all the states adopting the uniform law. Uniform laws are intended to secure not only identity of statute, but also uniformity of decision.

Kansas adopted the Uniform Controlled Substances Act July 1, 1972, replacing the Uniform Narcotic Drug Act, which had been enacted in 1957. The purpose of the Uniform Controlled Substances Act, 9 U.L.A. 197 (1979), is to regulate drug traffic. The Commissioners on Uniform State Laws explained:

"The Uniform Controlled Substances Act is designed to supplant the Uniform Narcotic Drug Act, adopted by the National Conference of Commissioners on Uniform States Laws in 1933, and the Model State Drug Abuse Control Act, relating to depressant, stimulant, and hallucinogenic drugs, promulgated in 1966. With the enactment of the new Federal narcotic and dangerous drug law, the 'Comprehensive Drug Abuse Prevention and Control Act of 1970' (Public Law 91-513, short title 'Controlled Substances Act' [21 U.S.C.A. § 801 et seq.]), it is necessary that the States update and revise their narcotic, marihuana, and dangerous drug laws.

"This Uniform Act was drafted to achieve uniformity between the laws of the several States and those of the Federal government. It has been designed to complement the new Federal narcotic and dangerous drug legislation and provide an interlocking trellis of Federal and State law to enable government at all levels to control more effectively the drug abuse problem.

"The exploding drug abuse problem in the past ten years has reached epidemic proportions. No longer is the problem confined to a few major cities or to a particular economic group. Today it encompasses almost every nationality, race, and economic level. It has moved from the major urban areas into the suburban and even rural communities, and has manifested itself in every State in the Union.

"Much of this major increase in drug use and abuse is attributable to the increased mobility of our citizens and their affluence. As modern American society becomes increasingly mobile, drugs clandestinely manufactured or illegally diverted from legitimate channels in one part of a State are easily transported for sale to another part of that State or even to another State. Nowhere is this mobility manifested with greater impact than in the legitimate pharmaceutical industry. The lines of distribution of the products of this major national industry cross in and out of a State innumerable times during the manufacturing or distribution processes. To assure the continued free movement of controlled substances between States, while at the same time securing such States against drug diversion from legitimate sources, it becomes critical to approach not only the control of illicit and legitimate traffic in these substances at the national and international levels, but also to approach this problem at the State and local level on a uniform basis." 9 U.L.A. at 188. *State v. Flinchpaugh,* 232 Kan. 831, 836, 659 P.2d 208 (1983).

Our legislature, recognizing the increasing drug problem that has been and is affecting our society, included a method of increasing the penalty for habitual violators of the Kansas Uniform Controlled Substances Act. K.S.A. 65-4127a provides:

"Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture, possess, have under his control, possess with intent to sell, sell, prescribe, administer, deliver, distribute, dispense or compound any opiates, opium or narcotic drugs. Any person who violates this section shall be guilty of a class C felony, except that, upon conviction for the second offense, such person shall be guilty of a class B felony, and upon conviction for a third or subsequent offense, such person shall be guilty of a class A felony, and the punishment shall be life imprisonment."

The propriety of inflicting severer punishment on second or subsequent offenders has been long recognized in this state. The offenders are not punished the second time for the earlier offense, but the repetition of criminal conduct aggravates their guilt and justifies increased penalties when they are convicted. The Kansas Supreme Court has recognized the validity of a habitual criminal act, *State v. Collins*, 215 Kan. 789, 528 P.2d 1221 (1974); that such an act does not violate due process or equal protection, *State v. Sully*, 219 Kan. 222, 547 P.2d 344 (1976); and is constitutional, *State v. Levier*, 226 Kan. 461, 601 P.2d 1116 (1979). Prior convictions can be limited to those which were committed in the sentencing state or may include prior convictions of other jurisdictions. The applicability of convictions obtained in other jurisdictions for enhancement purposes may be made conditional, requiring that the previous offense be of the same class, a felony or misdemeanor.

Our legislature intended that prior drug convictions within this state and drug convictions of other jurisdictions may be used to increase an offender's punishment for sentencing purposes under K.S.A. 65-4127a if, (1) the prior conviction was for an offense of the character specified in the Kansas Uniform Controlled Substances Act, and (2) the prior conviction was of the same class, a felony. A prior conviction for a misdemeanor theft would not be of the same character (a drug offense) or class (a felony), and therefore could not be used to enhance the penalty for a violation of the Uniform Controlled Substances Act.

The defendant's prior conviction, for sale of heroin in Iowa, was a violation of the same character under our law and the penalty, a felony, was of the same class. The State's use of the

prior Iowa conviction to enhance the sentence for the Kansas violation was proper.

The judgment of the district court is affirmed.