NOT DESIGNATED FOR PUBLICATION

No. 114,078

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID HORN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed December 30, 2016. Remanded with directions.

*Nicholas David*, of The David Law Office, LLC, of Topeka, for appellant.

*Natalie Yoza*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON and ARNOLD-BURGER, JJ.

*Per Curiam*:  Defendant David Horn appeals his conviction for domestic battery on the grounds the Douglas County District Court erred during the jury trial by admitting statements he made to law enforcement officers without granting his request for a hearing to determine whether those statements were voluntary or the product of an impermissibly coercive interrogation. We agree the district court erred. As an appropriate remedy, we conditionally affirm Horn's conviction and remand to the district court for the limited purpose of conducting a voluntariness hearing and any related proceedings that may be necessary.

1

For purposes of dealing with the issue Horn has raised, we may set the necessary factual predicate in summary fashion. The parties, of course, are familiar with the details. On January 22, 2015, Horn and his wife Tabatha had a disagreement that extended over the course of the day. Late in the afternoon, officers from the Lawrence police department responded to a call about a domestic dispute at the duplex where the Horns lived. During the jury trial, Tabatha testified to a version of events that, if believed, would support Horn's conviction for domestic battery under K.S.A. 2015 Supp. 21-5414(a). Horn testified in his own defense and offered a different account that tended to exonerate him. So the jurors had to resolve a classic credibility contest between Tabatha and Horn.

When the police arrived at the duplex on January 22, one of the officers questioned Horn about what was going on. The other officer spoke with Tabatha. The questioning of Horn took place in one of the bedrooms. The description Horn gave the officer of the disagreement with Tabatha was largely exculpatory. But, according to the officer's version, what Horn said then differed in some material respects from what Horn told the jurors. The State called the officer as a witness during the trial to recount the statements Horn made the day of the incident.

Horn's trial lawyer objected and requested the district court hold a hearing outside the presence of the jurors to determine if the statements Horn made to the officer were voluntary and, therefore, admissible. The State argued a hearing was unnecessary because the officer's interaction with Horn did not amount to a custodial interrogation. The district court then denied Horn's request for a hearing and admitted the statements. As we have indicated, the jury convicted Horn of domestic battery. He has appealed.

If government agents extract statements from a person through unduly coercive physical or psychological pressure—rendering the statements involuntary and the product

2

of a will overborne—the government cannot, then, use those statements as evidence against that person in a criminal prosecution. *Kansas v. Ventris*, 556 U.S. 586, 590, 129 S. Ct. 1841, 173 L. Ed. 2d 801 (2009); *Jackson v. Denno*, 378 U.S. 368, 376, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). To do otherwise would contravene a defendant's rights against self-incrimination and due process protected in the Fifth and Fourteenth Amendments to the United States Constitution. *Ventris*, 556 U.S. at 590; *Dickerson v. United States*, 530 U.S. 428, 433, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000); *State v. Schultz*, 289 Kan. 334, 342-43, 212 P.3d 150 (2009). Criminal defendants must be afforded hearings to challenge the voluntariness of their statements before those statements may be used against them. *Jackson*, 378 U.S. at 376-77; *State v. Miles*, 233 Kan. 286, 295, 662 P.2d 1227 (1983). The proceeding is commonly known as a *Jackson v. Denno* hearing. See *State v. Betancourt*, 301 Kan. 282, 289, 342 P.3d 916 (2015) (noting that "at a *Jackson v. Denno* hearing, the issue before the court is whether defendant's statement or confession was voluntary").

At a *Jackson v. Denno* hearing, the district court is to assess the voluntariness of the defendant's statements based on the totality of the circumstances surrounding the interaction between the government agents and the defendant. *State v. Fernandez-Torres*, 50 Kan. App. 2d 1069, 1075-76, 337 P.3d 691 (2014). Among the factors the district court may consider are: "(1) the accused's mental condition; (2) the duration and manner of the interrogation; (3) the ability of the accused on request to communicate with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language." *State v. Gilliland*, 294 Kan. 519, Syl. ¶ 3, 276 P.3d 165 (2012); see also *Fernandez-Torres*, 50 Kan. App. 2d at 1075. A government agent may induce an involuntary statement through improper threats of harm, promises of benefit, a combination of the two, or other undue influence over the suspect. *Hutto v. Ross*, 429 U.S. 28, 30, 97 S. Ct. 202, 50 L. Ed. 2d 194 (1976); *State v. Brown*, 286 Kan. 170, 174, 182 P.3d 1205 (2008). The State has to prove the voluntariness of a defendant's

3

statements by a preponderance of the evidence. *State v. Randolph*, 297 Kan. 320, 326, 301 P.3d 300 (2013).

Here, the district court never conducted a hearing and made no determination as to voluntariness. The district court presumably concluded that Horn was not subject to a custodial interrogation based on the trial evidence presented up to the point he objected to the State's use of his statements to the police officer. And the district court accepted the State's argument that absent a custodial interrogation, no *Jackson v. Denno* hearing was necessary. All of that reflects a bundle of interlocking errors.

The issue for us ultimately presents a controlling question of law: Did the district court err in failing to hold a voluntariness hearing when Horn objected, during trial, to the State's offer of his extrajudicial statements as evidence against him? Because the facts bearing on that issue are undisputed, we owe no deference to the district court's decision to dispense with a hearing. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010) (appellate court exercises unlimited review over question of law); *State v. Bennett*, 51 Kan. App. 2d 356, 361, 347 P.3d 229 (when material facts undisputed, issue presents question of law), *rev. denied* 303 Kan. ___ (2015); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011) (legal effect of undisputed facts question of law).

First, the district court should not have accepted the State's premise that in the absence of a custodial interrogation, a suspect's statements to government agents must be considered voluntary. The argument confuses the circumstances in which a law enforcement officer has to give *Miranda* warnings to someone being questioned with the circumstances rendering a statement involuntary. They overlap to some extent but ultimately involve different considerations.

4

When law enforcement officers interrogate a person who is in custody, they are obligated to inform that individual of various constitutional rights, as required by *Miranda v. Arizona,* 384 U.S. 436, 444-45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). See *State v. Warrior*, 294 Kan. 484, 496, 277 P.3d 1111 (2012). A person is considered "in custody" for that purpose if he or she has been formally arrested or has been deprived of his or her freedom in a significant way functionally equivalent to an arrest. *Miranda*, 384 U.S. at 444, 478-79. The accepted judicial test explores whether, under the circumstances, a reasonable person would conclude he or she could not terminate the questioning and leave. See *Stansbury v. California*, 511 U.S. 318, 323, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994) ("Our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."); *Warrior*, 294 Kan. at 497; *State v. Fritschen*, 247 Kan. 592, 601-03, 802 P.2d 558 (1990) (discussing and adopting the objective standard of evaluating whether a person was in custody for purposes of *Miranda*). The loss of freedom that marks a custodial interrogation also creates a fertile environment for eliciting involuntary statements. A person detained in unfamiliar and intimidating surroundings without the ability to leave—handcuffed to a table in an interrogation room at a police station, for example— has been placed in a situation in which extended questioning by a relay team of officers or even a single, persistent examiner may break that person's free will, yielding constitutionally involuntary statements. See *Fernandez-Torres*, 50 Kan. App. 2d at 1079 ("Interrogation rooms, by design, tend to be cloistered, thereby imparting a sense of isolation that itself can be coercive.").

The *Miranda* warnings inform suspects they need not answer questions and may have a lawyer present even if they cannot afford to hire one. By design, the warnings aim to reduce the likelihood government agents will ratchet up a custodial interrogation in ways that produce involuntary statements. *Miranda*, 384 U.S. at 456-58, 467-69. But a custodial interrogation is not itself inherently so coercive that any statement a suspect

makes must be involuntary. The converse, however, is also true: A suspect may give involuntary statements during noncustodial questioning, depending on the circumstances. See *Beckwith v. United States*, 425 U.S. 341, 347-48, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976) (recognizing that particular circumstances could render a suspect's statements to government agents involuntary even though interrogation was not custodial); *United States v. Preston*, 751 F.3d 1008, 1013, 1015-16 (9th Cir. 2014) (en banc); *United States v. Brave Heart*, 397 F.3d 1035, 1040 (8th Cir. 2005); *United States v. Swint*, 15 F.3d 286, 288-89 (3d Cir. 1994). So while a custodial interrogation may be more conducive to producing involuntary statements from suspects, noncustodial questioning does not, as a matter of law, preclude their production. The district court, therefore, erred in equating noncustodial with voluntary in denying Horn's request for a *Jackson v. Denno* hearing.

Second, the district court compounded the error by presuming to determine whether the interaction between the police officer and Horn amounted to a custodial interrogation based on a portion of the trial evidence. Even assuming the custodial character of their contact to be controlling, though it plainly is not, the trial evidence would not necessarily have portrayed the complete picture. The issue at trial—Horn's guilt or innocence of the criminal charges—did not directly correspond to the character of the police questioning, and the evidence presented on that issue wouldn't, either. In other words, Horn likely would have offered additional evidence bearing on the nature of the interrogation at a *Jackson v. Denno* hearing. And the State may well have brought out information from the officers about how they approached and dealt with Horn wholly apart from the circumstances relevant to his guilt or innocence. See *State v. White*, No. 109,953, 2014 WL 5312873, at *11 (Kan. App. 2014) (unpublished opinion) (Atcheson, J., concurring) ("[A] motion to suppress typically requires an evidentiary hearing dealing with issues only peripherally related to the defendant's guilt or innocence—the focal point of a trial."), *rev. denied* 302 Kan. 1008 (2015). Absent a stipulation or some other agreement of the parties, the district court should not have relied solely on the trial evidence to conclude the questioning of Horn was noncustodial. The parties should have

6

been afforded the opportunity to augment the trial record in a separate evidentiary hearing focused on the character of the interrogation.

The district court, therefore, erred in refusing to conduct a voluntariness hearing at Horn's request. The error necessarily compromised Horn's constitutional rights. Because the district court did not hold a hearing, we have neither an appropriate evidentiary record to review nor relevant credibility findings from the district court. As a result, we could not attempt to make a voluntariness determination even if we wanted to.[*]

[*]Had the district court conducted an evidentiary hearing or the parties otherwise stipulated to the evidence bearing on the voluntariness of Horn's statements, we could have decided the issue as a matter of law if the evidence taken in a light most favorable to Horn had shown the statements to be voluntary. See *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014) (if facts on motion to suppress are undisputed, question becomes one of law subject to unlimited review on appeal). Likewise, had the district court made credibility determinations or otherwise resolved material conflicts in the evidence bearing on voluntariness, we would have accepted those findings—leaving an ultimate question of law that we could have reviewed. See *State v. Garcia*, 297 Kan. 182, 197, 301 P.3d 658 (2013) ("[A]fter we give deference to the district court's findings of fact, we exercise de novo review of the totality of the circumstances to determine whether the confession was voluntarily given.").

Even the admission of a defendant's involuntary confession at trial may be harmless error. *Arizona v. Fulminante*, 499 U.S. 279, 295-96, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). An error compromising a criminal defendant's constitutional rights will be considered harmless if the State, as the party benefiting from the mistake, can show beyond a reasonable doubt that it had no effect on the verdict in light of the full record. *State v. Ward*, 292 Kan. 541, 569-70, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012); see also *Fulminante*, 499 U.S. at 295-96. Accordingly, if we assume Horn's statements to be involuntary and the State can demonstrate "no reasonable possibility" they played a material part in the jury's decision to convict, then Horn should receive no relief. *Ward*, 292 Kan. at 570.

To that end, the State argues that because the statements Horne made to the police officer were, at least on their face, essentially exculpatory, their admission at trial to impeach him did not amount to error at all. Alternatively, the State argues that other trial evidence supported Horn's guilt, so any error would have been harmless. We disagree in both respects.

Involuntary statements are considered inherently unreliable. Historically, government agents would sometimes resort to physical abuse to extract statements from suspects and reluctant witnesses. Statements given under the duress of physical pain are rightly viewed with skepticism. See *Idaho v. Wright*, 497 U.S. 805, 822-23, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990); *Yusupov v. Attorney General of the United States*, 650 F.3d 968, 982-83 (3d Cir. 2011). The Framers intended the Fifth Amendment limitation on compelled self-incrimination to, in part, eliminate torture as a means of interrogation. *Miranda*, 384 U.S. at 442-43. But blatant brutality and barbarity gave way to less obtrusive physical pressures and studied psychological gambits designed to overcome a suspect's resistance. 384 U.S. at 448; see also *State v. Garcia*, 297 Kan. 182, 195, 301 P.3d 658 (2013). Similarly, a government agent's promise of significant benefits—no charges or exceptional leniency, for example—may prompt unreliable statements from a suspect. 297 Kan. at 195-96. The courts, therefore, have held that a criminal defendant's statements found to be involuntary should not be admitted as evidence against him or her for any purpose. *Ventris*, 556 U.S. at 590; *Mincey v. Arizona*, 437 U.S. 385, 397-98, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011). The rule is a categorical one. In addition, courts recognize government agents ought not be rewarded for using interrogation techniques that readily yield involuntary confessions. See *Jackson*, 378 U.S. at 385-86; *Preston*, 751 F.3d at 1017-18. That furnishes another ground for barring involuntary statements.

The State's argument simply ignores those principles. It also blurs the failure of government agents to inform suspects of their *Miranda* rights before questioning them in

custodial settings with the extraction of involuntary, coerced statements. And it incorrectly posits that the remedy for the former extends to the latter. The law is otherwise. If a defendant has not been adequately advised as required by *Miranda* but, nonetheless, makes a voluntary statement, the government may not use that statement at trial as part of its case-in-chief establishing the defendant's guilt. *Oregon v. Elstad*, 470 U.S. 298, 318, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985); *United States v. Smith*, 831 F.3d 793, 798 (7th Cir. 2016). The prohibition imposes a detriment on the government designed to induce its agents to inform suspects of their constitutional rights as required by *Miranda*. See *Withrow v. Williams*, 507 U.S. 680, 702-03 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993) (O'Connor, J., concurring in part and dissenting in part). But because the statement is voluntary and, thus, intrinsically reliable, the government may use the statement to impeach the defendant, should he or she testify differently at trial. *Mincey*, 437 U.S. at 397-98; *United States v. Rosales-Aguilar*, 818 F.3d 965, 970 (9th Cir. 2016).

As we have outlined, however, a defendant's involuntary statement is considered inherently suspect and may not be used as evidence. *Dickerson*, 530 U.S. at 433-34. That is true of regardless of the statement's content. *Rogers v. Richmond*, 365 U.S. 534, 543-44, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961) (voluntariness determination not dependent upon truth or falsity of suspect's statement); *Parker v. Allen*, 565 F.3d 1258, 1280 (11th Cir. 2009); *Miles*, 233 Kan. at 295. Even ostensibly exculpatory extrajudicial statements may be deployed to shatter a defendant's credibility at trial. See *Miranda*, 384 U.S. at 476-77. A statement may be implausible on its face or in the face of other evidence in the case. Either way, the statement would tend to paint the defendant to be a prevaricator in the eyes of the jurors. Likewise, of course, contradictions between an involuntary extrajudicial statement and a defendant's trial testimony could have the same impact with jurors. But the unreliability of an involuntary statement renders any such conclusion dubious at best and wholly baseless at worst. The criminal justice process properly declines to trade on that kind of evidentiary infirmity to convict defendants.

In short, the State's position travels wide of its intended destination. So we return to the matter of harmlessness. Given the trial evidence and the particularly credibility-laden task confronting the jurors in sorting out what happened based on the conflicting accounts of Tabatha and Horn, we cannot say the State's introduction of Horn's statements to the police officer had little or no role in their decision to convict. Merely because there was evidence independent of Horn's statements sufficient to support the verdict doesn't establish harmlessness. The properly admitted evidence was something less than clear and overwhelming and required credibility determinations that in all likelihood would have been influenced by the inconsistencies in Horn's accounts of the events to the police and from the witness stand. Accordingly, the district court's error in admitting Horn's statements without holding a voluntariness hearing necessarily clouds the guilty verdict.

Horn contends the proper remedy requires a reversal of the conviction and a new trial. That would be true if, *in fact*, his statements to the law enforcement officer were involuntary. But, as we have explained, we don't know one way or the other because the district court never held an evidentiary hearing on the issue. And without a hearing, the record offers only an incomplete factual picture of the encounter between Horn and the police officer bearing on the character of the statements. An appropriate remedy would complete that picture, allowing the district court to make a fully informed decision on voluntariness.

Accordingly, we conditionally affirm Horn's conviction and remand to the district court for the limited purpose of conducting a *Jackson v. Denno* hearing to assess the voluntariness of the statements Horn made to the police officers who responded to the domestic disturbance call at his home. The Court ordered precisely that tailored remedy in *Jackson*, 378 U.S. at 394. See also *Miles*, 233 Kan. at 293; *State v. Milow*, 199 Kan. 576, 589-90, 433 P.2d 538 (1967) (citing *Jackson* in crafting remedy for trial court's failure to conduct voluntariness hearing). If the district court finds Horn made the

10

statements voluntarily, then the State properly introduced and used them during the trial. In turn, Horn could not have been prejudiced during the trial, and the jury's guilty verdict would have been grounded in admissible evidence, including the extrajudicial statements. Under those circumstances, Horn's conviction need not be set aside. If, however, the district court were to find Horn's statements to be involuntary, the district court should then order their suppression as evidence, set aside the conviction and sentence, and grant a new trial. We have already determined that if the statements were involuntary, their admission could not be excused as harmless error and the mistake would require a new trial.

As to his sentence, Horn contends the district court overstepped its authority in ordering that he undergo a domestic violence assessment and follow the recommendations based on that assessment as conditions of his probation. We disagree and affirm that aspect of the sentence. The jury convicted Horn of domestic battery in violation of K.S.A. 2015 Supp. 21-5414(a). But the jury also made a special finding that his conduct did not amount to an act of domestic violence. A violation of K.S.A. 2015 Supp. 21-5414(a) may consist of touching a domestic partner or another member of the household "in a rude, insulting or angry manner." Depending on the circumstances, such a touching would not necessarily involve violence.

More to the point here, a special finding of domestic violence *requires* the district court to order a domestic violence assessment of the defendant and mandates the defendant's compliance with the resulting recommendations unless the court enters a contrary order. K.S.A. 2015 Supp. 21-6604(p). Absent a special finding, as was true here, the assessment is not required. But, as provided in K.S.A. 2015 Supp. 21-5414(b)(1), a district court *may* order an assessment of and impose conditions on a defendant convicted of domestic battery without a special finding. The decision rests within the district court's sound discretion in sentencing a defendant for domestic battery. A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the

11

circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

Horn contends the district court mistakenly believed the jury had made a domestic violence assessment and cites a snippet from the transcript of the district court's pronouncement at the sentencing hearing. We have reviewed the district court's comments. In context, the district court correctly understood it had the discretionary authority to order a domestic violence assessment even without a domestic violence finding and was acting upon that authority in sentencing Horn. We find no abuse of discretion in that respect and affirm the assessment as a legally and factually appropriate component of the district court's sentence.

To sum up, we find the district court erred in failing to hold a *Jackson v. Denno* hearing to test the voluntariness of the extrajudicial statements Horn made to law enforcement officers. The error materially compromised Horn's constitutional rights. We remand to the district court for the purpose of conducting a voluntariness hearing and for any further proceedings that may be necessary based on the result of that hearing consistent with this opinion.

Remanded with directions.

12